UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHELE L. DESHAY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Case No. 4:12CV2126 JAR |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Michele Deshay's ("Deshay") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.

**I.     Background**

On January 11, 2010, Deshay filed an application for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. (Tr. 142-159). The Social Security Administration ("SSA") denied Deshay's claim on April 8, 2010. (Tr. 87) She filed a timely request for a hearing before an administrative law judge ("ALJ") on June 8, 2010. (Tr. 92) Following a hearing on March 8, 2011 (Tr. 40-78), the ALJ issued a written decision on April 21, 2011 upholding the denial of benefits. (Tr. 18-37) Deshay requested review of the ALJ's decision by the Appeals Council. (Tr. 15) On September 11, 2012, the Appeals Council denied Deshay's request for review. (Tr. 1-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Deshay filed this appeal on November 14, 2012. (Doc. 1) The Commissioner filed an Answer. (Doc. No. 10) Deshay filed a Brief in Support of her Complaint. (Doc. No. 20) The Commissioner filed a Brief in Support of the Answer. (Doc. No. 25) Deshay filed a Reply Brief. (Doc. No. 26)

## II.     Decision of the ALJ

The ALJ determined that Deshay meets the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity since May 1, 2008, the alleged onset date of disability. (Tr. 23) The ALJ found Deshay had the severe impairments of spinal stenosis with radiculopathy and fibromyalgia, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

After considering the entire record, the ALJ determined Deshay had the residual functional capacity ("RFC") to perform sedentary work as defined in the regulations, except that she is limited to only frequent reaching and fingering with the dominant upper extremity. (Tr. 24) The ALJ found Deshay unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 31) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 32)

Deshay appeals, contending the RFC and the credibility findings are not supported by substantial evidence. She also contends the ALJ failed to give controlling weight to the opinions of the treating physicians. The Commissioner maintains that the ALJ's decision was supported by substantial evidence on the record as a whole.

## III.    Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on March 8, 2011. The ALJ heard testimony from Deshay and Gary Weimholt, a vocational expert.

#### 1. Deshay's testimony

Deshay was 48 years old at the time of the hearing and living with her husband. (Tr. 60) She is a high school graduate with one year of college. (Tr. 47-48) Deshay worked as a truck driver for Gate Gourmet, an airplane catering service, for over 21 years. (Tr. 50-52) She was also the elected mayor of Moline Acres, Missouri. (Tr. 48-49, 72) She was paid $600 a month. (Tr. 50) With respect to her mayoral duties, Deshay testified she did most of her work from home. There was one monthly meeting typically lasting two hours. She takes a couple of breaks and the mayor pro tem takes over for her while she goes out. (Tr. 49, 67-68)

In March 2008, while working for Gate Gourmet, Deshay injured her neck and right shoulder trying to pull open an aircraft door. (Tr 51-53) She had back and neck surgery on October 29, 2008 which helped with the immediate pain in her right shoulder and arm but didn't completely eliminate it. (Tr. 57) Her symptoms reoccurred, with pain radiating down her right arm. (Tr. 56, 61) She has had physical therapy and pain management treatment. (Tr. 56-57) In addition, her right vocal cord was paralyzed as a result of the surgery, causing her voice to be hoarse. (Tr. 57, 61) Deshay had rotator cuff surgery on April 7, 2009. (Tr. 61-62) Although the pain improved at the time, it has returned. (Tr. 62) She is right-hand dominant. (Tr. 62)

It was Deshay's testimony that she was unable to work because of pain in her head, neck, arms and legs. (Tr. 53-55) She experiences frequent nausea, dizziness, daily headaches, and the medication she takes for headache and pain causes drowsiness. (Tr. 53, 65) She has anxiety, depression and insomnia. (Tr. 56, 58-59) She takes medication that keeps her calm (Tr. 53) but it

causes dry mouth, dizziness, and nausea. (Tr. 56) Deshay further testified she had no memory issues or difficulty dealing with people. (Tr. 58-59)

The pain in her arms prevents Deshay from doing everyday household chores, such as cleaning, cooking and laundry. (Tr. 62, 66) These activities also aggravate the symptoms in her neck. (Tr. 62-63) She can lift a gallon of juice with both hands but can't hold it with one. (Tr. 58) She can walk approximately 50 feet but has difficulty bending or sitting without support. (Tr. 57-58, 64-65) She cannot do anything that requires her to look down because her head is not supported. Activities such as reading have to be done at eye level. (Tr. 69) She has no trouble with her personal hygiene. (Tr. 60) She has a driver's license and but only drives short distances because she is unable to turn her head properly. (Tr. 47) Deshay testified she had hobbies, and liked to walk, but can't do it anymore. (Tr. 69) She is unable to care for her disabled father or young grandchildren. (Tr. 68-69)

The majority of her day is spent lying down because her medication makes her feel nauseated and dizzy. (Tr. 59, 65) She will fall asleep during the day because her medication makes her drowsy. (Tr. 65) If she wakes up at 9:00, she'll typically fall back to sleep at 11:00 and get up about 1:00. (Tr. 66) She is able to get out of the house, but usually doesn't go anywhere because she needs to lay down or sit in a recliner. (Tr. 66) She goes to church because they are able to accommodate her. (Tr. 67)

### 2. Testimony of Vocational Expert

Vocational expert, Gary Weimholt, testified regarding Deshay's past work, with skill and exertion levels, as follows. Deshay has been a food service driver, code 906.683.010, which is someone who delivers food to airports for use in airplanes. (Tr. 72) This is classified by the Dictionary of Occupational Titles ("DOT") as semiskilled, medium work. (Id.) There is no

classification in the DOT for elected official, but Weimholt likens it to a city planning aide, code 199.364.010, skilled, sedentary. (Tr. 72-73) These jobs, particularly in a small community like Moline Acres, are typically less than full-time and not more than 20 hours a week. (Tr. 73)

For hypothetical one, the ALJ asked Weimholt to assume an individual of the claimant's age, education, and past work experience capable of performing at the sedentary exertional level with frequent reaching and fingering with the dominant upper extremity. He determined that such a person would be unable to perform any of Deshay's past work. (Tr. 74-75) Such a person would, however, be able to perform a job such as information clerk, code 237.367.022, which is considered to be semiskilled, sedentary. (Id.) There are approximately 1,500 of those kinds of jobs in the state of Missouri, and 75,000 nationwide. (Id.) Some of these jobs have associated duties such as surveillance system monitor, which he includes in the number of available jobs. (Id.) There are also some automated cashiering situations which he classifies under cashier II, code 211.462.010, light. (Id.) It was Weimholt's opinion that there are a small number of those jobs performed at a sedentary level, or seated or standing, and the lifting is not significant, not above 10 pounds. (Tr. 75) The number of these jobs is the same, 1,500 in the state of Missouri, and 75,000 nationwide. (Id.)

For the second hypothetical, the ALJ asked Weimholt to assume the same limitations from the first hypothetical and the following additional limitation: that the person would need to lie down for 30 minutes twice daily, once in the morning and once in the afternoon. (Tr. 75) Weimholt determined that such a person would not be able to perform any of these jobs or any other work in the regional or national economy. (Id.)

Weimholt was examined by Deshay's attorney, who posed a hypothetical assuming a person limited to sedentary work and requiring a sedentary position where they could be seated

in a chair with a high back to rest the head throughout the workday. That person would require five-minute breaks from the seated position at least twice an hour. In addition, reaching out in front of them to perform light activities would be limited to occasional or less. Repetitive lifting and reaching would be precluded with both upper extremities. Lifting would be limited to 10 pounds or less with both hands. (Tr. 76) Such a person would, in his opinion be unable to perform Deshay's past relevant work or any other work that exists in the national economy. (Id.) Further, Deshay's side effects from her medication, i.e., dizziness and nausea, would negatively impair the entire job base. (Tr. 77)

### B. Medical Records

The ALJ summarized Deshay's medical records at Tr. 26-29. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f),

7

416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

8

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V.   Discussion

In her appeal of the Commissioner's decision, Deshay raises several issues. First, she alleges the ALJ's residual RFC determination is not supported by substantial evidence. (Doc. No. 20 at 11-14) Second, Deshay argues the ALJ failed to give controlling weight to the opinions of her treating physicians, Steven W. Baak, M.D., and Robert D. Carafiol, M.D. (Doc. No. 20 at 14-16). Finally, DeShay argues the ALJ's credibility findings are not supported by substantial evidence. (Id. at 16-18) Because the ALJ erred in failing to properly consider the opinions of Dr. Baak and Dr. Carafiol, the Court will only address that issue.

A treating physician's opinion is generally entitled to substantial weight but does not automatically control. Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 880 (8th Cir.2009) (internal quotations and citation omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." Id. In weighing medical opinion evidence, the ALJ is required to consider the doctor's treatment relationship with the claimant, including the length of treatment and the type of relationship, in order to determine whether the doctor is familiar enough with the claimant to justify assigning the

opinion greater weight. 20 C.F.R. § 404.1527(c). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." Andrews v. Colvin, 2014 WL 2968815, at *2 (E.D.Mo. July 1, 2014) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir.2000)).

In determining that Deshay retained the ability to perform a range of sedentary work, the ALJ discounted the opinions of Dr. Baak and Dr. Carafiol, Deshay's more recent medical providers, and instead gave substantial weight to the functional capacity assessments from Deshay's treating surgeons, David King, M.D. and Keith Wilkey, M.D. (Tr. 27, 29-30). By August 2009, Dr. King opined that Deshay required no further treatment for her rotator cuff tear, clearing her to lift 50 pounds occasionally and 25 pounds frequently, carry 35 pounds occasionally and 20 pounds frequently, and work a full 8- to 12-hour shift. He released Deshay from his care. (Tr. 27, 387) Later that same month, Dr. Wilkey cleared Deshay to lift 50 pounds occasionally, 25 pounds frequently, and 10 pounds constantly. (Tr. 388)

On January 12, 2011, Dr. Baak examined Deshay and noted she had a reduced range of motion with pain in the neck, but no radicular pain, and positive trigger points in the trapezius muscle, supraspinatus muscle, lateral epicondyle, and greater trochanter. (Tr. 480-82) On February 22, 2011, Dr. Baak completed a physician statement noting Deshay had the following limitations: she could stand/walk less than 2 hours in an 8 hour workday, must periodically alternate between sitting and standing, and would be constantly limited in reaching and handling, and seldom limited in fingering and feeling.[1] (Tr. 485) Dr. Baak deferred to orthopedist David J.

---

[1] In her decision, the ALJ misconstrued the physician statement regarding Deshay's use of her upper extremities for reaching and handling. The ALJ stated that Dr. Baak "did not note any manipulative limitations, or significant limitations involving reaching and handling," and that Deshay "could seldom finger or feel." (Tr. 28) The fact that this finding is not supported by the

King's assessment of Deshay's ability to lift and carry, i.e., that she could occasionally lift 50 pounds and carry 35 pounds, as well as frequently lift 25 pounds and carry 20 pounds. (Tr. 486-87) In discounting Dr. Baak's opinions, the ALJ stated that Dr. Baak appeared to rely heavily on Deshay's subjective complaints and that the specific limitations he noted were inconsistent with the evidence as a whole. (Tr. 28) The ALJ does not, however, discuss any inconsistencies. Further, the ALJ seemingly contradicts herself when she acknowledges that Dr. Baak's opinion "is consistent with the [RFC] capacity found in this decision." (Tr. 28)

Dr. Carafiol first evaluated Deshay in August of 2010. He saw her again starting in October of 2010 and met with her thirteen times between October 18, 2010 and January 14, 2011. (Tr. 515-519) On March 3, 2011, Dr. Carafiol submitted a narrative source statement, stating in part that "I do not see how [Deshay] could succeed in gainful employment now or in the future due to the severity of her medical illnesses. The concomitant depression and anxiety related to her medical condition make the prospect even more remote that she could work successfully." (Tr. 515)

In discounting Dr. Carafiol's opinions, the ALJ characterized Deshay's relationship with him as "brief." (Tr. 29) In the Court's view, however, the number of visits and contacts between Deshay and Dr. Carafiol suggests that further consideration of his opinion is appropriate. The ALJ also found that Dr. Carafiol's course of treatment was not consistent with what one would expect if Deshay were truly disabled and that his treatment notes did not reveal the type of "clinical abnormalities one would expect to find if [Deshay] were disabled." (Id.) An ALJ may not, however, substitute his own opinions for the opinions of medical professionals. Cross v. Colvin, 2014 WL 320161, at *9 (E.D. Mo. Jan. 29, 2014) (citing Ness v. Sullivan, 904 F.2d 432,

---

medical evidence suggests to the Court that the ALJ did not correctly consider Dr. Baak's statements in her RFC finding.

435 (8th Cir. 1990)). Upon review, Dr. Carafiol's records show Deshay was experiencing auditory hallucinations, suicidal ideations, that she felt disconnected from her family, was anxious and not sleeping well. (Tr. 515, 518) Moreover, her other treating physicians documented her ongoing depression symptoms throughout the relevant periods for her claim. (Tr. 497, 466, 468, 477, 490, 521, 515, 516, 518)

## VI. Conclusion

For these reasons, the Court finds there is not substantial evidence in the record to support the ALJ's discounting of Dr. Baak and Dr. Carafiol's opinions. The ALJ has the duty to fully develop the record on issues such as this. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir.2005). This case should, therefore, be remanded. On remand, the ALJ is directed to further develop the record to include additional consideration and evaluation of the opinions received from treating physicians Dr. Baak and Dr. Carafiol.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 30th day of September, 2014.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**